**REPUBLIC STEEL CORPORATION**

v.

**Jesse E. PEOPLES et al.**

**No. 14953.**

United States Court of Appeals,
Fifth Circuit.

Dec. 2, 1954.

J. R. Forman, Jr., Greye Tate, Birmingham, Ala., Burr, McKamy, Moore & Tate, Birmingham, Ala., of counsel, for appellant.

W. A. Jenkins, Jr., Walter Fletcher, William C. Barber, Birmingham, Ala., Gillespy & Dominick, Birmingham, Ala., of counsel, for appellee.

Before BORAH, RIVES and TUTTLE, Circuit Judges.

BORAH, Circuit Judge.

These appeals are from judgments for the plaintiffs in each of seven suits brought to recover damages to real estate and for annoyance, inconvenience and mental anguish resulting from the negligence of the defendant in and about the exploding of dynamite and blasting of rock and ore formations in connection with its strip mining operations. The suits were consolidated below and tried together by order of court.

The evidence adduced in substantiation of the claims of the plaintiffs consisted of their own testimony. Each plaintiff identified his dwelling house, described in general terms its structural features, its location with respect to the nearest point of blasting and detailed the injuries and damages which he attributed to defendant's blasting operations. The injuries claimed consisted in the main of plaster cracks, cracks in walls, foundations, chimneys, concrete pavements and the like. Plaintiffs testified that their houses were undamaged before the blasting complained of occurred and that the evidence of damages first appeared following the severe blasting which they heard and felt. In addition to the foregoing, several of the plaintiffs testified that they notified defendant of the damage which was being caused by the blasting but defendant did not promptly do anything about it though it did have its representatives inspect the properties for damage before the present suits were filed. In the meantime, the blasting continued unabated. Finally, there was testimony on the part of plaintiff H. P. Tessier, Sr., that on one occasion during the latter part of July, 1953, some small rocks had been cast upon his house by blasting. This in general was the range of the testimony and plaintiffs rested their case in chief without proof of any specific negligence of the defendant. Defendant then presented evidence to show that its use of explosives in its operations on its own premises is necessary; that its blasting and blasting practices were not only reasonable and in accordance with the customary, usual and generally accepted practices prevailing in the community, but were, in the opinion of its experts and according to the best available technical knowledge and information, such as to be incapable of causing any damage to any of plaintiffs' property.

The court denied defendant's motion for directed verdict at the close of all the evidence, and its motion to set aside the verdict and judgment rendered therein and to render judgment in favor of defendant in accordance with defendant's motion for a directed verdict.

On appeal the defendant assigns as error, the above stated action of the trial court.

The issues thus presented to this court for determination are whether the evidence was sufficient in law to support a verdict, (1) as to those counts in each complaint seeking damages as the proximate result of negligence, (2) as to those counts of each complaint seeking damages as the proximate result of wanton misconduct, (3) as to the one count in each complaint, except that of plaintiff Guy, seeking damages for trespass by reason of rocks, debris and other material being cast upon plaintiffs' property.

 Under the law of Alabama which is controlling under the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, it is clear that one conducting blasting operations on his own land is liable to an adjoining or neighboring proprietor in trespass for any injury resulting from casting rocks or other debris on such adjoining land, regardless of any prudence or negligence in the mode or circumstances of the blasting. But, as to any injury as may result from one's lawful operations on his own premises, not constituting a legal nuisance there is no liability to an adjoining or neighboring proprietor except for some proximate negligence in the mode or circumstances of such operation. Ex parte Birmingham Realty Co., 183 Ala. 444, 63 So. 67.

 In the instant proceeding, there is no substantial evidence that the

defendant was negligent in and about its blasting operations or that the blasting operations were the proximate cause of any damages to plaintiffs' premises. Plaintiffs readily concede that the Alabama law requires evidence of the blasting being negligently done but maintain that they can only prove such negligence by the effect of the blasting on the residential structures. On the basis of this premise it is argued that evidence that the structures were undamaged before the blasting took place and evidence that the damage appeared after the blasting occurred "would not only tend to exclude the reasonable probability of the damage occurring in any other way, but would naturally support the inference that the damaging condition in the structures was due to the negligent blasting of appellant." We cannot follow this reasoning, which at best is not legalistic. The doctrine of res ipsa loquitur has no place in actions of this type. The burden is on the plaintiffs to show some specific act or acts of negligence, and to show further that such negligence directly contributed to the result. Mere proof that the residential structures were damaged by blasting would not alone sustain the actions. It must further appear that the defendant company in using explosives, violated a duty owing by it to the plaintiffs in respect to their property or failed to exercise due care. Wrong and damage must concur to create a cause of action.

The plaintiffs, none of whom professed to know anything about blasting, were content to rest their case without offering any evidence to show that the injury to their premises was occasioned by the omission to use due care. The defendant in turn, offered its daily records showing the amount of explosives and the number of shots fired during the period in question and through its foreman and others outlined the practices and procedures used in drilling, loading and firing the various shots. In short, defendant revealed the full extent of its blasting operations and disclosed that when the heavier shots in the overburden were to be made technical advice was sought and obtained. A technical expert of the DuPont Company testified that on request he gave such technical advice and assistance. He stated further that in his opinion the defendant's blasting practices, as revealed by the company's records and from his own observation, were in accordance with generally accepted blasting practices; that the loadings were not excessive but if anything, were light and the shots were insufficient to cause any damage to any of plaintiffs' property. This witness identified United States Department of the Interior Bulletin 442 entitled "Seismic Effects of Quarry Blasting" and referred to the tables and the technical information contained therein which have since their promulgation been used throughout the United States as a safety guide for those engaged in blasting operations. In addition he described the tests which were made with a pin seismograph several weeks prior to the institution of these suits and pointed out that although the seismograph at times was located within three or four hundred feet from the point of explosion and at other times was hardly more than half the distance to the closest house here involved, that on no occasion was the vibration at the location of the instrument of sufficient density to cause damage.

Defendant's knowledge and information in respect to its blasting operations was again confirmed prior to trial by Dr. Leet, professor of geology and seismology at Harvard University. Dr. Leet made with the Leet seismograph, of which he was the inventor, a photographic record of two shots in the overburden and from that record determined factually that vibration of damaging intensity was not being transmitted to the closest dwelling here involved, much less to those more remote dwellings. Dr. Leet who had participated in some of the tests that led to the results reported in Mines Bulletin No. 442, identified that publication and testified that all of the blasts set off by the defendant fell well within the limits of safety prescribed therein.

These are but some of the high spots in the testimony. Without undertaking to set forth the evidence in greater detail we think that the foregoing recitation of uncontradicted facts is sufficient to demonstrate that from no theory of the evidence was the jury authorized to infer that defendant was chargeable either with negligence or with anticipating any damages to plaintiffs' premises. Nor were they authorized to infer that the defendant was chargeable with reckless indifference to consequences and that it intentionally did the wrongful act or omitted to discharge some known duty which produced the injurious effect. Feore v. Trammel, 212 Ala. 325, 102 So. 529. We think that the denial of the motions for a directed verdict under both the negligence and wantonness counts was error.

This brings us to a consideration of the third specification of error which relates to the failure of the trial judge to direct a verdict as to the one count in each of the six complaints seeking damage for trespass. A careful reading of the record reveals that except on one occasion testified to by plaintiff H. P. Tessier, Sr., no plaintiff claimed that rock or other debris were cast upon his premises by any blasting operations. Their sole claim was for dust, and under the evidence the jury was not authorized to find that such dust was cast upon the premises by the blasting operation. This we believe is readily demonstrable. H. P. Tessier, Sr., testified that on one occasion during the latter part of July, 1953, and at about 11:30 in the morning small rocks had been cast upon his house. This was an accidental explosion and it was charged out of the case by the trial judge on request of the defendant. Plaintiff Guy made no claim for trespass. Kulp testified that dust from the loading of ore after it was blasted damaged his draperies and rugs. Calderbank claimed damage from ore dust blowing into his house. H. P. Tessier, Jr., stated that he did not know of any damage from ore dust. Peoples said he was bothered by ore dust but could not and would not estimate his damages and Paradise testified that he noticed ore dust. We think it plain that the denial of the motions was error. Other claimed errors have been considered but do not merit discussion.

The judgments appealed from are Reversed.